UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| DeANGELO LAMONT THOMAS, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 1:05 CV 197 LMB |
| UNKNOWN JOHNSON, et al., | ) ) ) |
| Defendants. | ) |

### MEMORANDUM AND ORDER

Plaintiff DeAngelo Lamont Thomas, a Missouri prisoner, brings this civil rights complaint under 42 U.S.C. § 1983, alleging that various prison officials used excessive force on him and were deliberately indifferent to his serious medical needs. Defendants have filed a Motion for Summary Judgment (Document Number 79), to which plaintiff has filed a Response (Doc. No. 93). Plaintiff has filed a Motion to Exclude Deposition (Doc. No. 84), Motion for Entry of Default (Doc. No. 95), and a Motion to Compel (Doc. No. 98).

### Background

In his Complaint, plaintiff states that defendants used excessive force on him on March 1, 2005, resulting in chemical spray exposure, and that defendants forced him to remain exposed to pepper spray on his personal items for several days thereafter. Plaintiff further alleges that defendants deliberately disregarded his serious medical needs.

On June 8, 2007, the court entered an Order granting plaintiff's motions to compel in part, denying plaintiff's Motion for Entry of Default, lifting the stay on proceedings, denying plaintiff's Motion for Entry of Clerk's Default, denying plaintiff's Motion for Ruling as moot,

granting Defendant Roger Jaynes' Motion to Dismiss Roger Jaynes as a Defendant, extending discovery in the matter for thirty days, and directing plaintiff to provide the court with the correct addresses of Defendants Donald Husk, Amanda McMillen,[1] and John C. Darin within twenty days of the date of the Order so that service may be properly effected. (Doc. No. 90). In the Order dated June 8, 2007, Roger Jaynes was dismissed as a defendant. It would have been more appropriate to substitute Mark Jaynes for Roger Jaynes.

## Discussion

As stated above, there are several motions currently pending before the court. The undersigned will address each of the pending motions in turn.

As an initial matter, the undersigned notes that Defendants Donald Husk, Amanda McMillen, and John C. Darin have not been served in this matter nor has service been waived on their behalf. In the court's June 8, 2007 Order, plaintiff was directed to provide the court with the correct addresses of Defendants Husk, McMillen, and Darin, within twenty days of the date of the Order. (Doc. No. 90). Plaintiff was cautioned that the failure to provide the court with these addresses would result in dismissal of plaintiff's claims as to these defendants without prejudice. See Fed. R. Civ. P. 4(m). To date, plaintiff has not provided the court with the correct addresses for these defendants. Thus, plaintiff's Complaint will be dismissed as to Defendants Husk, McMillen, and Darin without prejudice.

---

[1]Although plaintiff has named "Amanda McMilan" as a defendant in this matter, the evidence presented by the parties reveals that the proper spelling of this individuals's last name is "McMillen." As such, this individual will be referred to as Amanda McMillen in this Memorandum and Order.

A.  **Plaintiff's Motion for Entry of Default and Motion to Compel**

On July 24, 2007, plaintiff filed a "Declaration for Entry of Default" (Doc. No. 95), in which he states that defendants failed to produce "any inter-office communications regarding plaintiff's declarations of suicide on March 1, 2005, during the midnight shift," pursuant to the court's order granting plaintiff's motion to compel. Plaintiff further states that on June 21, 2007, he sent a letter to defendants' attorney informing him that defendants had failed to produce the document. Defendant attached this letter to his motion. See Attach. B. Plaintiff thus seeks default because defendants have failed to produce any documents in response to the order.

On September 19, 2007, plaintiff filed a Motion for an Order Compelling Discovery, in which he requests that the court enter an order pursuant to Rule 37(a) of the Federal Rules of Civil Procedure compelling defendants to produce the inter-office communication written in response to plaintiff's declarations of suicide on March 1, 2005 during the midnight shift. (Doc. No. 98).

Plaintiff has attached to his Declaration for Entry of Default a letter written to plaintiff from Dustin Allison, Assistant Attorney General, dated July 16, 2006. See Attach. A. In this letter, Mr. Allison, attorney for defendants, states that no inter-office communications have been identified regarding plaintiff's declarations of March 1, 2005. See id. Because no document exists, I will deny plaintiff's motions.

B.  **Motion to Exclude Deposition**

On November 17, 2006, plaintiff filed a "Motion to Suppress or Exclude" (Doc. No. 84), along with a "Memorandum of Law" (Doc. No. 85), in which he requests that the court exclude from evidence his deposition, which was taken by defendants on August 22, 2006. Defendants attached portions of the deposition in support of their Motion for Summary Judgment. Plaintiff

claims that he requested to review his deposition pursuant to Rule 30(e) of the Federal Rules of Civil Procedure. Plaintiff stated that defendants failed to provide a copy of his deposition in a timely manner to allow plaintiff an opportunity to correct any discrepancies pursuant to Rule 30(e). Plaintiff further states that he requested a copy of his deposition from defendants in a letter dated November 6, 2006. Plaintiff claims that he was not provided a copy of the deposition until defendants filed their Motion for Summary Judgment, and that the copy he was provided was incomplete.

Rule 39(e) provides that if a deponent requests before completion of the deposition, the deponent shall have thirty days after being notified that the transcript is available in which to review the transcript and make any changes. See Fed. R. Civ. P. 39(e).

Although plaintiff states that he requested to review his deposition, he does not indicate if his request was made prior to the completion of the deposition. Plaintiff also does not indicate what, if any, discrepancies were found. Further, plaintiff was provided with the portions of the deposition that were used in support of defendants' Motion for Summary Judgment. As such, the court will deny plaintiff's motion to exclude the deposition of DeAngelo Lamont Thomas.

C. **Defendants' Motion for Summary Judgment**

In support of their Motion for Summary Judgment, defendants argue that they are entitled to summary judgment because plaintiff's claims against defendants fail to demonstrate a basis for relief under either the subjective or objective prongs of an Eighth Amendment analysis. Defendants argue in the alternative that plaintiff's claims fail to overcome the protections afforded to them by qualified immunity. Plaintiff opposes summary judgment.

1.  **Factual Background**

Viewed in the light most favorable to the plaintiff, the record reveals the following facts. Plaintiff DeAngelo Thomas is confined as an offender at the Southeast Correctional Center ("SECC"), in Charleston, Missouri, now and at all times relevant to his Amended Complaint. See Def's Ex. A, p. 7:7-11. Plaintiff was an administrative segregation offender. See Def's Ex. A, pp. 8:4-12, 17-22; 11:24-14:16. Plaintiff had a history of assault in the prison setting. See id. Plaintiff also had a history of possessing dangerous contraband, including knives. See id. Plaintiff admits to a history of suicidal ideation and mental illness. See Def's Ex. A, pp. 19:9-20:4.

On March 1, 2005, Defendant Johnson, a Corrections Officer at SECC, ordered plaintiff to submit to mechanical wrist restraints before being moved to an observation cell for suicide watch. See Def's Ex. H, p. 2. Plaintiff admits that he refused to submit to the wrist restraints. See Def's Ex. A, pp. 17:16-17; 21:12-14; 24:15-21. Before applying force, Defendant Johnson provided plaintiff another opportunity to comply, and plaintiff refused. See id. Defendant Johnson also checked with medical staff to ensure plaintiff had no pre-existing medical condition precluding chemical spray exposure; plaintiff had none. See Def's Ex. H, p. 3.

Defendant Johnson then sprayed pepper spray into plaintiff's cell. See id. After several minutes, Defendant Johnson again asked plaintiff to comply and plaintiff again declined. See id. Defendant Johnson then inserted a pepper spray disbursal device into plaintiff's cell. See id. Thereafter, plaintiff signaled to Defendant Terry Dare – a Corrections Officer who was operating a video camera to record the events – that he was ready to comply. See id.; Def's Exs. G; K. Defendant Johnson returned to plaintiff's cell to transport plaintiff and no further force was

applied. See Def's Exs. A, p. 28:2-4; K. Plaintiff admits that no further force was applied. See Def's Ex. A, p. 28:2-4.

Defendant Johnson and Defendant Husk then escorted plaintiff to a strip cage where he removed his clothes in preparation for placement in an observation cell equipped for suicide watch. Def's Exs. H, p. 2; K. In the observation cell, plaintiff had access to a sink with running water with which to wash his face.[2] See Def's Exs. J, K.

After the use of force, plaintiff was seen by nurse Amanda McMillen, who noted that plaintiff was oriented and quiet, not hostile or angry. See Def's Ex. I. Nurse McMillen noted that plaintiff's eyes were watering, but that plaintiff had no symptoms of distress. See id. Nurse McMillen also assessed plaintiff as having a knowledge deficit and the potential to engage in self-harm. See id. Plaintiff admits that he also received care from a psychologist while staying in the observation cell. See Def's Ex. A, p. 28:16-24.

The following day, a different nurse – Nurse Whitehead – observed plaintiff and noted the following: no signs of trauma; no medical/mental health complaints; no crying; and no withdrawal, hostile or angry behavior. Plaintiff was quiet, oriented, and denied any complaints. See Def's Ex. I.

On March 3, 2005, plaintiff was seen twice. First, he declared a medical emergency, and then he discussed a case of "athlete's foot." See Def's Ex. I. Nurse McMillen noted that plaintiff refused to permit his vitals to be taken during his self-declared medical emergency. See id. Nurse McMillen also noted that plaintiff sought a cell reassignment and that she then referred plaintiff to non-medical staff. See id. Nurse McMillen saw plaintiff almost three hours later at

---

[2]Although plaintiff admits there was a sink in the observation cell, he states that defendants have presented no evidence that it had running water. Doc. No. 94, p. 7. Plaintiff later states that he "does not recall the water being on." Id. at 9.

which time he complained of athlete's foot. See id. Plaintiff did not complain of continued exposure to pepper spray and there is no record that plaintiff retained pepper spray on his person or in his cell. See id.

Plaintiff saw Nurse Amanda Gibson on March 4, 2005, after declaring another medical emergency. See Def's Ex. I. Plaintiff complained of chest pain in the left side of his chest which he described as a stabbing sensation. See id. Nurse Gibson took plaintiff's vitals, at which time his blood pressure was 150/90. See id. Nurse Gibson rechecked plaintiff's vitals an hour-and-a-half later, at which time his blood pressure had gone down to 120/80 and plaintiff reported that his chest pain had decreased. See id. Plaintiff was instructed to contact the medical staff if his condition worsened. See id.

Plaintiff admits that, upon return to his administrative segregation cell, he had access to water, towels, and Pine Sol to clean his area. See Def's Ex. A, pp. 30:12-17; 33:24-34:5. Plaintiff admits that he cleaned his walls and windows, but did not attempt to clean the remainder of his cell. See Def's Ex. A, pp. 30:18-22; 34:6-9.

After declaring a medical emergency on March 3, 2005, plaintiff sought a cell transfer. See Def's Exs. I; A, pp. 35:15-18. Plaintiff received a cell transfer on Monday, after the weekend had passed. See Def's Ex. A, p. 35:21-23. Plaintiff has experienced no lasting effects from exposure to pepper spray. See Def's Ex. A, p. 38:2-17.

The use of force video tape shows all instances in which force was applied to induce plaintiff's compliance to the order of a correctional officer on March 1, 2005. See Def's Exs. J, K. A Use of Force Review Committee reviewed the application of pepper spray and mechanical restraints to plaintiff on March 1, 2005, and concluded that the actions taken were

"warranted/appropriate to control the actions of the offender, while ensuring staff safety and the security of an Administrative Segregation wing..." Def's Ex. H, p. 2.

**2.     Legal Standards**

A court may grant summary judgment when no issue of material fact exists and the moving party is entitled to judgment as a matter of law, according to Federal Rule of Civil Procedure 56 (c). A fact is material only when its resolution affects the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252, 106 S. Ct. at 2512. In deciding a motion for summary judgment, the court must review the facts and all reasonable inferences in a light most favorable to the nonmoving party. See Canada v. Union Elec. Co., 135 F.3d 1211, 1212 (8th Cir. 1997).

In a motion for summary judgment, the movant bears the initial burden of proving the absence of any genuine issue of material fact that would preclude judgment for the movant. See City of Mt. Pleasant, Iowa v. Associated Elec. Co-op, Inc., 838 F.2d 268, 273 (8th Cir. 1988). Once the movant has met this burden, the non-movant may not rely on mere denials or bare allegations, but must point to specific facts that raise a triable issue. See Anderson, 477 U.S. at 249, 106 S. Ct. at 2510-2511. The non-movant must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of material fact for trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The Supreme Court has found that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Id. at 327, 106 S.Ct. at 2555 (quoting Fed. R. Civ. P. 1).

Plaintiff has brought the instant action pursuant to 42 U.S.C. § 1983, claiming violations of his rights under the Eighth Amendment. "To state a claim under section 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States . . ." West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 2255-56, 101 L.Ed.2d 40 (1988). Thus, to be entitled to relief under 42 U.S.C. § 1983, a plaintiff must show that: (1) a person (2) acting under color of state law (3) subjected the plaintiff or caused the plaintiff to be subjected (4) to the deprivation of a right secured by the Constitution or laws of the United States. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 829, 105 S. Ct. 2427, 2439, 85 L.Ed.2d 791 (1985); Shrum ex rel. Kelly v. Kluck, 249 F.3d 773, 777 (8th Cir. 2001).

**3.     Excessive Force**

Plaintiff first argues that defendants used unconstitutionally excessive force against him on March 1, 2005, resulting in chemical spray exposure.

The Eighth Amendment protects inmates from the unnecessary and wanton infliction of pain by correctional officers regardless of whether an inmate suffers serious injury as a result. Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992). The Constitution "does not mandate comfortable prisons," and only those deprivations denying "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation. Rhodes v. Chapman, 452 U.S. 337, 347-49, 101 S.Ct. 2392, 2399-2400, 69 L.Ed.2d 59 (1981). Officers do not violate the Eighth Amendment when they use force reasonably "in a good-faith effort to maintain or restore discipline." Hudson, 503 U.S. at 6, 112 S.Ct. at 998. See Johnson v. Blaukat, 453 F.3d 1108, 1112 (8th Cir. 2006). However, force is not to be used "maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7, 112 S.Ct. at 999. Factors to be considered in deciding whether a particular use of force was reasonable are

whether there was an objective need for force, the relationship between any such need and the amount of force used, the threat reasonably perceived by the correctional officers, any efforts by the officers to temper the severity of their forceful response, and the extent of the inmate's injury. Hudson, 503 U.S. at 7, 112 S.Ct. at 999; Johnson, 453 F.3d at 1112.

Here, the undisputed facts reveal that plaintiff had a history of assault in the prison setting. Plaintiff also had a history of suicidal ideation and mental illness. On March 1, 2005, Defendant Johnson ordered plaintiff to submit to mechanical wrist restraints before moving plaintiff to an observation cell so that he could be placed on suicide watch. Plaintiff admits that he refused to submit to the wrist restraints. Defendant Johnson provided another opportunity for plaintiff to comply, and plaintiff again refused. Defendant Johnson checked with medical staff to ensure plaintiff had no pre-existing medical condition precluding chemical spray exposure; plaintiff had none. Defendant Johnson then sprayed pepper spray into plaintiff's cell. After several minutes, Defendant Johnson again asked plaintiff to comply and plaintiff declined. Defendant Johnson then inserted a pepper spray disbursal device into plaintiff's cell. Plaintiff finally indicated that he was ready to comply. Plaintiff was then transported to a strip cage where he removed his clothes in preparation for placement in an observation cell equipped for suicide watch. The observation cell contained a sink. No further force was applied. Plaintiff subsequently received medical and psychological care.

Defendant Johnson's use of pepper spray was a reasonable use of force given plaintiff's repeated failure to follow the officer's directions to submit to wrist restraints. Plaintiff was given several opportunities to comply with Defendant Johnson's orders before force was applied. Defendant Johnson properly checked with medical staff before applying the pepper spray. Defendant Johnson gradually applied more force as plaintiff continued to disobey orders.

Defendant Johnson applied only the amount of force necessary to achieve compliance with the officer's orders. Further, the force used by Defendant Johnson did not produce any lasting injury to plaintiff. Thus, there is no genuine issue of material fact that force was not used "maliciously and sadistically to cause harm."

**4.     Deliberate Indifference**

Plaintiff challenges the conditions of confinement after he was returned to his administrative segregation cell. Plaintiff claims that the residue from the pepper spray incident remained on his personal property and laundry after he returned to his segregation cell. Plaintiff further alleges that defendants were deliberately indifferent to his serious medical needs.

"The Eighth Amendment requires prison officials to provide humane conditions of confinement, and '[o]ne condition of confinement is the medical attention given to a prisoner.'" Aswegan v. Henry, 49 F.3d 461, 463-64 (8th Cir. 1995) (quoting Weaver v. Clarke, 45 F.3d 1253, 1255 (8th Cir. 1995)). There is both an objective and subjective component to a claim of deliberate indifference. To establish deliberate indifference in the context of the denial of medical care, plaintiff must demonstrate: (1) that he "suffered objectively serious medical needs" and (2) that the prison official "actually knew of but deliberately disregarded those needs." Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997). "[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996).

The undisputed evidence shows that defendants did not deliberate disregard plaintiff's known serious medical needs. As such, the court need not decide whether plaintiff's allegations satisfy the objective component of an Eighth Amendment violation.

The evidence reveals that plaintiff declared a medical emergency on March 3, 2005, the day after he returned to his administrative segregation cell. Defendant Paul Luber, a Corrections Officer, acted immediately to notify medical staff. Medical staff responded to plaintiff's self-declared medical emergency. Plaintiff refused to have his vital signs taken when he was seen by the nurse. He requested a cell transfer and Nurse McMillen referred plaintiff to non-medical staff. Plaintiff was seen by Nurse McMillen later in the day, at which time he complained of athlete's foot. Plaintiff did not complain of continued exposure to pepper spray. Plaintiff then requested a cell transfer, which he received on Monday, March 6, 2005. Plaintiff declared another medical emergency on March 4, 2005, complaining of chest pain. Nurse Gibson responded and took plaintiff's vitals. Nurse Gibson returned and reassessed plaintiff an hour-and-a-half later, at which time plaintiff's blood pressure had gone down and plaintiff reported that his chest pain had decreased. Plaintiff declared no other medical emergency before March 6, 2005, when he received his cell transfer. Plaintiff admits that he experiences no lasting effects of the pepper spray exposure.

Plaintiff makes several allegations as to Nurse McMillen, in an attempt to raise a material fact. Nurse McMillen, however, is no longer a defendant in this matter.

Plaintiff claims that Defendant Cheryl Dowdy, a Corrections Services Trainee, ignored plaintiff's complaints made on March 3, 2005, that he was being exposed to mace in his cell. Plaintiff states that Defendant Dowdy directed plaintiff to send her a "kite," or an inmate request, for a cell transfer. Plaintiff contends that Defendant Dare and Defendant Mark Jaynes knowingly placed plaintiff in a cell that had been exposed to mace and observed plaintiff coughing and having difficulty breathing. Plaintiff argues that Defendants Hargrave and Luber, who are both

correctional officers, were aware of plaintiff's living conditions and failed to move plaintiff to a different cell.

Plaintiff does not deny that he had materials with which to clean his cell and that he ultimately received a cell transfer. Further, plaintiff received prompt medical attention when he requested it. Plaintiff's claim with regard to the remaining defendants is essentially that they did not act fast enough in transferring him to another cell. As such, plaintiff alleges, at most, a claim for negligence. Negligence, however, is insufficient to rise to a constitutional violation. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). "The prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." Estate of Rosenberg by Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). Thus, there is no genuine dispute of material fact on the claim of deliberate indifference to serious medical needs.

Plaintiff has failed to show that defendants applied constitutionally excessive force. Similarly, plaintiff is unable to demonstrate that defendants deliberately disregarded his known serious medical needs. Thus, defendants' Motion for Summary Judgment will be granted. Because I am granting defendants' Motion for Summary Judgment on the merits, I need not discuss defendants' qualified immunity argument.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's Complaint be **dismissed without prejudice** as to Defendants Donald Husk, Amanda McMillen, and John C. Darin, because of lack of service.

**IT IS FURTHER ORDERED** that in accordance with the foregoing Memorandum, Mark Jaynes is substituted for Roger Jaynes as a defendant.

**IT IS FURTHER ORDERED** that plaintiff's Motion for Entry of Default (Doc. No. 95) be and it is **denied**.

**IT IS FURTHER ORDERED** that plaintiff's Motion to Compel (Doc No. 98) be and it is **denied**.

**IT IS FURTHER ORDERED** that plaintiff's Motion to Exclude Deposition of DeAngelo Lamont Thomas (Doc. No. 84) be and it is **denied**.

**IT IS FINALLY ORDERED** that Defendants Johnson, Hargrave, Luber, Jaynes, Dowdy, and Dare's Motion for Summary Judgment (Doc. No. 79) be and it is **granted**. A separate Summary Judgment will be entered on this date.

Dated this 27th day of September, 2007.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE